## NEW YORK OYER AND TERMINER.

### SEPTEMBER, 1851.

Before EDMONDS, Justice, and two aldermen.

---

### THE PEOPLE v. JOSEPH CLARK.

On the trial of an indictment for murder, if the jury find that the killing was produced by the prisoner, with an intention to kill, though that intention is formed at the instant of striking the fatal blow, it is murder.

Such intention may be inferred from the circumstances of the case, and, among other things, from the nature of the weapon used, and the wounds given by it.

INDICTMENT for murder.

The prisoner was a rough, coarse, English sailor, and was one night out on a "spree" with some of his fellow seamen, in the port of New York, and a little after midnight they got into a fight. The disturbance attracted the attention of two of the police, who, on approaching the scene, discovered that two of them were stripped for a fight. The police parted them, and Gillespie, one of the policemen, attempted to lead Brown, one of the sailors that was stripped, to his lodgings. Brown broke away from Gillespie several times, and rushed back to fight. The other policeman then interfered, and succeeded in forcing Brown into the place where he said he boarded. While doing that, and while Gillespie remained on the sidewalk to preserve the peace, the prisoner went to a cart that was standing in the street, one hundred or two hundred feet distant, and took from it one of its rungs, and with it struck Gillespie a blow on the side of his head, which felled him to the ground, and then struck him three or four blows as he lay on the ground. He then retired to his lodgings, where he told a room-mate that he "was coming up street and saw two officers beating a sailor man; he had knocked one of them down, and thought he had put a *set* on him."

The policeman died that night, and, as it appeared on a

post mortem examination, from a fracture in the skull near its base, extending from ear to ear.

*The Prisoner's Counsel* requested the court to charge:

1. If the prisoner had reason to believe that undue and improper assaults were being committed on his friend Brown, he had a right to interfere for Brown's protection, and if in his defense of Brown he had exceeded the power he was justified in using, he would not be guilty of murder, but only of manslaughter.

2. That the weapon used was not evidence of a premeditated design.

3. That death caused in the heat of passion, with a dangerous weapon, without a premeditated design to kill, was manslaughter in the third degree.

*The Court* charged as requested in the third proposition; and as to the first proposition, charged that there was nothing in the case to warrant the application of the principle, even if it was a sound one, for it was not the policeman who was dealing with Brown that he struck, but the other one, who was some distance off, and not at all interfering with Brown.

And even if it had been the other — him who was dealing with Brown — that would have been no excuse, for the officer, with the badge of his office plainly to be seen on his person, was engaged in the strict line of his duty, and it would have been an offense in the prisoner to have interfered with him in any way. So that there was nothing in the situation of Brown to have justified or excused any interference by the prisoner, and, least of all, in a manner so violent as to endanger life, and calculated to show a depraved heart regardless of human life, which in some instances converts a homicide into murder, even when there is no intention to kill.

And the court further charged that if the jury believed that the fatal blow was struck by the prisoner, with a design to effect death, it was murder, even though such design was

formed only on the instant, accompanying and causing the act. And the nature of the weapon used, the manner in which the assault was made, and the circumstances attending it, were all legitimate subjects of consideration for the jury, in their endeavors to ascertain the intention or design with which the act was done.

The prisoner was convicted of murder.